```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
2                      WACO DIVISION

3  SABLE NETWORKS, INC., ET AL   *    September 28, 2020
                                 *
4  VS.                           *     CIVIL ACTION NOS.
                                 *
5  JUNIPER NETWORKS, INC.        *    W-20-CV-524
   DELL TECHNOLOGIES, INC., ET AL     W-20-CV-569

6            BEFORE THE HONORABLE ALAN D ALBRIGHT
7                 TELEPHONIC DISCOVERY HEARING

8  APPEARANCES:

9  For the Plaintiff:      Daniel P. Hipskind, Esq.
                           Dorian S. Berger, Esq.
10                         Berger & Hipskind LLP
                           9538 Brighton Way, Suite 320
11                         Beverly Hills, CA 90210

12 For Defendant Juniper:  Paige Arnette Amstutz, Esq.
                           Stephen Burbank, Esq.
13                         Stephen E. McConnico, Esq.
                           Scott, Douglass & McConnico, LLP
14                         303 Colorado Street, Suite 2400
                           Austin, TX 78701

15
                           Eugene Y. Mar, Esq.
16                         James Alex Reese, Esq.
                           Farella Braun & Martel, LLP
17                         235 Montgomery Street, 17th Floor
                           San Francisco, CA 94104
18
   For Defendant Dell:     Michael J Newton, Esq.
19                         Brady Randall Cox, Esq.
                           Alston & Bird LLP
20                         Chase Tower, 2200 Ross Avenue
                           Suite 2300
21                         Dallas, TX 75201

22                         Emily Chambers Welch, Esq.
                           Alston & Bird LLP
23                         1201 West Peachtree St., Ste. 4900
                           Atlanta, GA 30309

24

25
```

2

1  Court Reporter:              Kristie M. Davis, CRR, RMR
                                PO Box 20994
2                               Waco, Texas 76702-0994
                                (254) 340-6114
3

4       Proceedings recorded by mechanical stenography, transcript

5  produced by computer-aided transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (September 28, 2020, 1:30 p.m.)

2      MS. MILES:  Telephonic discovery hearing in Civil Action

3  6:20-CV-524, styled Sable Networks, Incorporated and Sable IP,

4  LLC versus Juniper Networks, Incorporated and Case No.

5  6:20-CV-569, styled Sable Networks, Incorporated, Sable IP, LLC

6  versus Dell Technologies Incorporated, Dell Incorporated and

7  EMC Corporation.

8      THE COURT:  If I could hear announcements from all

9  counsel, specifically who will be speaking, and a reminder to

10  everyone, when you talk on the record, please identify who you

11  are so we can get it down accurately.  Starting with the

12  plaintiff, please.

13      MR. HIPSKIND:  Thank you and good afternoon, Your Honor.

14  This is Daniel Hipskind on behalf of the plaintiffs, and I'm

15  joined on this call by my colleague Dorian Berger, and I will

16  probably be the primary speaker.

17      THE COURT:  Very good.  Thank you, sir.

18      MS. AMSTUTZ:  Good afternoon, Judge Albright.  This is

19  Paige Amstutz with Scott, Douglass & McConnico.  I'm joined by

20  my colleague -- or with my colleague Stephen Burbank.  We also

21  have our client representative Mr. Dave Saunders on the line,

22  along with our co-counsel Eugene Mar and Alex Reese from

23  Farella Braun & Martel, and depending on the topic at hand, you

24  will hear from Mr. Mar or Mr. Reese.

25      THE COURT:  Very good.  Thank you, and thank you to

4

1    everyone who's a client representative who took the time to be

2    on this call today.  I appreciate that.

3        Who's up next?

4        MR. NEWTON:  Your Honor, this is Mike Newton representing

5    the Dell defendants.  With me are Brady Cox and Emily Welch of

6    Alston & Bird.  Unfortunately we don't have Mr. Tom Brown today

7    of Dell because it is Yom Kippur.

8        THE COURT:  Okay.  Anyone else?

9        Okay.  So when last we were together, we were trying to

10   figure out what to do with everyone's schedule.  Why don't we

11   start -- Mr. Newton, I apologize.  I've had several hearings

12   since then.  If you'll get me back refocused on -- I remember

13   we were trying to coordinate Markmans and some other schedules.

14   If you'll bring me up to speed, I'll let everyone chime in

15   about what they think we ought to do.

16       MR. NEWTON:  Sure.  This is Mike Newton again.

17       So Cisco has a Markman scheduled for January 14th, and

18   what we were thinking about doing is trying to consolidate the

19   Juniper and Dell hearings perhaps for maybe April 2nd, and what

20   that would allow us to do, since we do have patents that

21   overlap between the Cisco, Dell and Juniper cases, is to brief

22   less than all the terms once we see what your tentative will be

23   on January 14th.  So we had proposed a schedule to the other

24   side where we start the Markman exchange process in early

25   January and ultimately conclude with a Markman on April 2nd

1  which would involve Juniper and Dell at a single Markman

2  hearing.

3      THE COURT:  And is Juniper okay with that?

4      MR. MAR:  Your Honor, this is Eugene Mar for Juniper

5  Networks, and we are in agreement with Mr. Newton and the Dell

6  team about having a consolidated Markman hearing out in April

7  so we can have the benefits of Your Honor's ruling in the Cisco

8  Markman hearing from January, and so we are in accord with the

9  proposed dates that Mr. Newton has also suggested to plaintiffs

10  here.

11      THE COURT:  And Mr. Hipskind?

12      MR. HIPSKIND:  Yes, Your Honor.  This is Dan Hipskind for

13  the plaintiff.

14      We are fine with Dell's proposal regarding Markman.  I

15  think our concern is that they would use this -- or that the

16  defendants would use this modest movement in the Markman date

17  to gain an unfair advantage in unrelated areas if we move the

18  trial dates that are on schedule.  Specifically, we're

19  concerned about four areas of prejudice if we move the trial

20  dates, and those would be --

21      THE COURT:  Mr. Hipskind, help me out here.  If we set

22  trials -- tell me -- I think that's right.  I think that's when

23  I pulled the plug and said we needed to have Juniper's counsel

24  on.  If you'll remind me when I scheduled the -- I assume I've

25  scheduled Cisco and Juniper already for trial?

1          MR. HIPSKIND:  Yes, Your Honor.

2          THE COURT:  Tell me those dates, please.

3          MR. HIPSKIND:  I will have to look up the Cisco date, but

4    the Juniper trial date is February 28th, 2022, and the Cisco

5    case is sometime in January 2022.

6          THE COURT:  Okay.  Okay.  That helps me, and that means --

7    so let me ask before I hear from Mr. Hipskind -- and I'll

8    certainly give him a chance.  Do the Juniper people intend --

9    that's a terrible way of asking.  Let me try again.

10         Mr. Mar, let me actually treat you like people.  I

11   apologize for that.  Mr. Mar, if the Markman were not -- if

12   Juniper were not until April 2nd, that would still give you

13   about ten months to get ready for trial.  Mr. Mar or Mr. Reese

14   either one, how many patents are involved in the plaintiff's

15   case against Juniper?

16         MR. MAR:  Your Honor, this is Eugene Mar.

17         The answer to your question, Your Honor, there are six

18   patents involved.

19         THE COURT:  Okay.  Now, the advantage will be -- well,

20   here's what I'm thinking about doing, which I ordinarily would

21   not do, but it seems to me it may make sense in this unique

22   case, and I think there's even maybe another case that is

23   coming along as well that the plaintiff has filed.  Ordinarily

24   I stay discovery until the Markman for many reasons, but those

25   reasons may not apply to this case.  So for those of you who

1   have not been in front of me, what's going to happen at the

2   Cisco Markman is at the -- number one, I'll be giving out

3   tentatives the day before the Markman and at the Markman I will

4   be confirming what the claim constructions are going to be.

5   Here's what I'm going to do in this case so that I can keep

6   everyone on track, at least Cisco and Juniper on track, and

7   then this will benefit Dell as well in terms of when I set

8   their trial date.  I'm going to go ahead and open discovery for

9   everyone -- by everyone I mean Cisco and Dell and Juniper and

10  obviously the plaintiff, but I'm going to allow discovery to

11  commence in this one unique case all at the same time when

12  discovery gets exchanged between the plaintiff and Cisco.  So

13  that will allow Juniper to be conducting discovery in advance.

14  That'll give Juniper in essence a year to be getting ready on

15  most of the claim terms.  And also we'll have the Markman on

16  April 2nd and then we'll figure out where to go from there, but

17  I'll be able to hold the trial date I think if I do that for

18  Juniper.  I'll allow discovery to take place.

19       So give me just a second to run through my dates here.

20  Let me add to that -- so let me add to that for Juniper, given

21  this is a very odd duck for me in the way I'm doing things, if

22  you -- if counsel for Juniper and plaintiff -- I would

23  recommend that you go ahead now that you know you've got these

24  kind of weird dates that are coming up, if you need help from

25  me figuring out how best to organize your discovery and expert

1    reports, obviously talk with each other and try and get this

2    worked out, but if for some reason you have problems, let me

3    know.

4         Also because of the unique situation we have here, if

5    Juniper and the plaintiff want to adjust in some ways when

6    their motions are filed to give themselves a little more time

7    and make them closer to trial than what's in the standard

8    schedule, I'll do that because at least some of what Juniper's

9    going to be doing will be delayed by about two months.  That is

10   if they find the extra claim terms are necessary to be

11   identified and construed, but this will give Juniper and the

12   plaintiff a jump and they'll actually wind up having -- let me

13   double-check here.  But they'll actually -- Juniper will

14   actually wind up having more than a year to do discovery and

15   get ready for trial.

16        So to recap, I'm going to set the Markman for Juniper and

17   Dell for April 2nd of this year.  Discovery will be allowed to

18   open for Cisco and Juniper and Dell beginning immediately after

19   the Markman takes place in the Cisco case on January 14th, and

20   I'm going to maintain for now the trial date for Juniper of

21   February 28th, 2022.

22        So having said all that, Mr. Hipskind, is there anything

23   else you needed to add?

24        MR. HIPSKIND:  No.  As to the Juniper case, that all

25   sounds great for the plaintiffs.  Nothing to add.  The only

1  thing to add for the Dell case would be a request for a

2  March 2022 trial date.

3      THE COURT:  I'm going to take up -- I'm just -- I don't

4  have a calendar here.  March would -- probably sounds okay.

5  April sounds okay, but let's -- let's take that up when I

6  typically do.  Well, let me ask the counsel -- Mr. Newton, is

7  there any reason for you to think you wouldn't be ready by

8  March of 2022, especially given the fact that your two trials

9  are already going to possibly have come and gone and you'll get

10 started discovery in February?

11     MR. NEWTON:  Your Honor, this is Mike Newton.

12     March is fine.  We'll be ready.

13     THE COURT:  Okay.  Mr. -- so everyone knows, I just don't

14 have my calendar here.  No one that knows me -- and some people

15 on this call know me very well.  No one would ever give me

16 control over a calendar.  And so I'll have to go to people who

17 are much better at that than I am.  And if we can set it in

18 March, Mr. Hipskind, we will.  If we don't have something

19 available then, it'll be April, but it'll be in the March/April

20 time period.

21     If you -- if -- let me do this.  Give me a second.  I'll

22 go ahead -- if you all will just be kind enough to give me a

23 second, I'll e-mail my clerks and see if we can get a March

24 date.  Just a second.

25     Gentlemen and ladies, I think we can accommodate March.

1   My law clerk Hannah will get back to you today I think sometime

2   and give you the date in March of 2022.  I think I was told

3   that counsel for Juniper might have an issue they wanted to

4   raise as well before we parted.  So Mr. Mar or Mr. Reese?

5        MR. REESE:  Yes, Your Honor.  Thank you very much.

6        Go ahead, Eugene.

7        MR. MAR:  Your Honor, this is Eugene Mar.  Just one

8   administrative thing.  We do have a discovery issue, and Mr.

9   Reese will be raising that with you shortly.

10       On the scheduling order, as -- we need a new deadline I

11  guess by which the parties could submit a new scheduling order

12  to the Court.  I was hoping we could have at least a week.

13  Given some of the dates articulated today, I think there might

14  be some compression on the back end of the schedule that we'll

15  have to work out with the plaintiffs.  I'm particularly

16  concerned about summary judgment and some of the pretrial

17  conference events overlapping on a very short schedule for the

18  Court.  So if the Court perhaps could give us a week to work

19  out with the plaintiffs a new proposed scheduling order to

20  submit to you, Your Honor, that might be good.

21       THE COURT:  Well, I think I'm generally perceived as a

22  very unreasonable person, but maybe I can overcome that in just

23  this one case by saying I really -- I won't be sitting here

24  waiting for it.  If you all need a reason, that's great.  I

25  could pretend that I am, but I won't be.  And so -- and let

1   me -- but I tried to signal this earlier.  I understand that

2   this is kind of a cattywompus deal that I'm doing here.  And

3   so -- and I don't want to unfairly take away from Juniper or

4   the plaintiff, but typically the defendant is the one who files

5   more summary judgment motions and stuff.  So I definitely want

6   Mr. Hipskind to be listening and understand that I'm certainly

7   okay if you all make certain you have adequate -- and it's

8   probably for the plaintiff's benefit too.  I want to make sure

9   you all still have an adequate amount of time to do your

10  discovery, to get your expert reports done, take the

11  depositions of your experts and get all that done despite the

12  schedule I'm giving you.  I mean, it's not terribly onerous.

13  It's not the Eastern District of Virginia, but I understand

14  it's slightly compressed and I'm happy to have you eat up some

15  of what would ordinarily be the Court's time.  I will tell you

16  realistically though I need to have the final reply of whatever

17  you're filing, Markman -- Markman.  Gosh -- summary judgment or

18  Daubert to me at least probably a month before the trial if you

19  guys really want me to have an adequate amount of time to

20  review it.  Less time than that.  I worry that's too compressed

21  for me to finish reading everything and to get you all a

22  hearing and really -- and deal with it fairly.  But I think if

23  I have a month at the end, I think that will probably be fine.

24  And so keep that in mind.  Does that -- and whenever y'all work

25  this out, fine.  If you can't work it out for some reason, just

1   let my folks know and we'll get on the phone with you.

2       I would suggest only this:  I would try and figure out

3   this week whether or not you can work it out because next week

4   I start a trial and I'll be less available to resolve something

5   like this by phone on short order.  So if you don't think

6   you'll be able to work it out, let me know by Friday and I'll

7   have another hearing like this by phone and I'll help you guys.

8   Otherwise, I just don't know starting next Monday for a week

9   when I'm going to have -- be able to break away and help you

10  guys out.

11      MR. MAR:  Understood, Your Honor.  Thank you.

12      THE COURT:  And then I think you said you also might have

13  a discovery motion?

14      MR. REESE:  Yes, Your Honor.  Thank you.  This is Alex

15  Reese on behalf of Juniper Networks.

16      So I thought, Your Honor, if I could just take a moment to

17  give you a little bit of chronology that a dispute relates to

18  the plaintiff'S amended preliminary infringement contentions

19  which they provided on September 17th.  There's a little bit of

20  chronology that puts that in context and why there's a dispute

21  here.  So if I could just take a step back.

22      As relevant to this case, Juniper makes routers and

23  firewall devices.  Sable, the plaintiffs, filed their complaint

24  against Juniper on June 15th, 2020, and in the complaint the

25  plaintiff accused a line of Juniper routers called the MX line,

1   the MX series of routers of infringement.  The complaint also

2   cites a large number of documents relating to the MX products

3   that cites probably about a dozen documents relating to the MX

4   series of products.

5          A couple months after that on August 14th we had a meet

6   and confer with plaintiff's counsel during which we informed

7   plaintiff's counsel that Juniper intended to file a motion for

8   disqualification, the Berger and Hipskind law firm which is

9   plaintiff's lead counsel in this case.  And we explained on

10  that call the basis for the motion, and the basis was that two

11  attorneys at Berger and Hipskind previously represented Juniper

12  in patent infringement cases that we believe are substantially

13  related to this one.  And part of the reason, we explained on

14  that call, part of the reason that we believe they're

15  substantially related is that those previous cases involved

16  some overlap in accused products.  In other words, the products

17  accused of infringement and the cases where plaintiff's counsel

18  defended Juniper several years ago overlapped with the products

19  that were identified in plaintiff's complaint here.  So we

20  informed them of that on August 14th during a meet and confer

21  phone call.  And then a few weeks later on September 10th we

22  filed our motion to disqualify opposing counsel.

23         That same day Sable provided its original infringement

24  contentions, and even though the MX products, MX series of

25  Juniper products were accused in the complaint in the September

1  10th infringement contentions, the MX products had been

2  dropped, along with a couple other products lines that are

3  identified in the complaint but not in the September 10th

4  infringement contentions.

5      So then a week later after having reviewed our

6  disqualification motion, Sable amended infringement

7  contentions.  The plaintiff sent proposed amended infringement

8  contentions.  And in those amended infringement contentions the

9  plaintiff now re-accuses the MX line of routers.  The same day

10 they filed their opposition to this disqualification motion,

11 and in that opposition the plaintiff admitted to having dropped

12 certain products that are identified in the complaint but not

13 in the infringement contentions for the purpose of avoiding

14 disqualification.  In other words, they were worried that the

15 basis of Juniper's disqualification motion would be these

16 overlapping products and so they dropped their infringement

17 allegations against several lines of products in the hopes that

18 it would help them avoid disqualification of their lead

19 counsel.

20     So with that -- with that rather lengthy chronology of

21 already of a short case, of a young case I should say, we

22 believe that the amended infringement contentions are improper

23 because they don't comply with the Court's order governing

24 proceedings.  They don't comply with the Footnote 4 which I

25 believe now might be Footnote 5 that requires diligence and

1    that any amendments be based on new information, information

2    that the party did not have before the original contentions

3    were served.  And so we're asking the Court to strike the

4    amended infringement contentions.  Specifically it's just one

5    chart, Exhibit E to the infringement contentions, that replaces

6    the entire line of products that were accused in the original

7    contentions served on September 10th and now accuses the MX

8    products in Exhibit E.  So that's the -- that is the basis or

9    that is the chronology.

10       And the reason that we believe that the amended

11   infringement contentions don't comply with the Court's order

12   governing proceedings is, first, we don't believe that

13   plaintiffs can show diligence.  It clearly knew about the MX

14   line of products since before filing the complaint because they

15   are accused in the complaint.

16       They also -- the plaintiff clearly reviewed a large amount

17   of literature relating to the MX products before filing the

18   complaint because it's quoted in the complaint, and they had

19   three months, more or less, before they served their original

20   infringement contentions, and in that time period they decided

21   to drop the allegations of the MX products.  So we don't

22   believe they can show diligence.  We also don't believe that

23   the amendment is based on new information.  There's no dispute,

24   I believe, that the documents that plaintiffs rely on in their

25   amended infringement contentions were all publicly available

1   before they served their original contentions in some cases

2   several months or even information was publicly available even

3   years before the original contentions.  So although Sable has

4   certified that it had not identified the information in the

5   amended contentions before serving them, we believe information

6   was available and perhaps it was in plaintiff's possession

7   before they filed the amended infringement contentions.

8       So we're asking the Court to strike the amended

9   contentions and to go back to the original contentions which

10  again accuse a different line of products, not the MX products,

11  because we believe the amended contentions are improper.

12      THE COURT:  How are you prejudiced by the amendment?

13      MR. REESE:  To be candid, Your Honor, we don't think it

14  causes much prejudice for Juniper.  They filed these one week

15  after their original contentions.  So we believe that the Court

16  should not allow these kind of tactics where they drop products

17  specifically to avoid disqualification and then throw them back

18  in once they read the basis of our disqualification motion.  We

19  don't think that complies with the standard that the Court set

20  forth in its order governing proceedings.

21      THE COURT:  Okay.  Well, yeah.  You know, I don't -- you

22  know, absent some prejudice to Juniper, which I don't see at

23  this early stage, I don't really think it's -- I don't even

24  know that I have the power -- I mean, in essence -- you're in

25  essence actually kind of asking me to sanction them for their

1    conduct, and I don't -- I don't think it rises to that level by

2    any means, and you can't show prejudice.  So I don't know that

3    I really even have the power to give you the relief that you're

4    seeking in this situation if I can't make either finding.  So

5    I'm not going to do that at this time.  I'm not going to strike

6    the plaintiff's infringement contentions based on the scenario

7    as I understand it.

8          Is there anything else I can take up?

9          MR. REESE:  Yes, Your Honor.  If I could -- this is Alex

10   Reese again.  If I could just ask if we could set -- some of

11   this is a bit difficult to describe orally.  If we could set

12   forth the basis in a short, you know, no more than five page

13   submission to the Court, I think it might aid in setting forth

14   the full context, including the fact that much of the

15   information that they're -- that the plaintiffs are now relying

16   on was available long before the original contentions were

17   served.  That's a little hard to describe.

18         THE COURT:  Mr. Reese, I get that.  I get that.  It's

19   just -- you know, none of us are perfect.  I'm not taking the

20   plaintiff's side here, but, you know -- you know, we're --

21   absent prejudice to you, if this were at the other end of

22   the -- let me make clear.  If this were at the other end of the

23   case, we're about to go to trial, you know, you want to add --

24   they wanted to add something into an expert report that they've

25   had for six months or something where I can't -- I've got --

1    I'm trying to put all this on the record.  You know, I have

2    several tools here.  If you had said you had prejudice, then I

3    would have said, well, would having additional time to deal

4    with them adding those products fix that because we could fix

5    the prejudice.  But when Juniper can't articulate -- and I

6    don't think -- I think you're correct.  I think you did exactly

7    what you should.  I would have been maybe a little disappointed

8    if you would have said that Juniper was prejudiced unfairly,

9    which is the standard, at this early stage.  You know, the --

10   you know, I -- that's just not -- that's not my job, I don't

11   think, is to keep people -- and it's not going to be my job to

12   do that when you are -- not you in this case, but when a

13   defense counsel says, Judge, you know, we did our best to find

14   art and we didn't have it, or, we didn't appreciate we have the

15   art but we didn't appreciate it, or, we had a reason why we

16   didn't think it was the best thing to do to assert it at the

17   time, but now we do.  And plus you have a situation here where,

18   you know, this isn't the last time I even allow infringement

19   contentions.  I'm going to allow amendment of the infringement

20   contentions after the Markman and I'm going to allow amendment

21   of invalidity contentions after the Markman.  I really have a

22   very strong belief that I ought to give the plaintiff every

23   opportunity to assert whatever claims they feel that they're

24   entitled to assert.  I feel that defendants ought to have the

25   opportunity to assert every defense that they have to

1   infringement or validity unless it's -- there's unfair

2   prejudice to the other side by me allowing it to happen.  I

3   was -- I was on both sides of these issues for a long time, and

4   so I -- I'm completely unbiased as to either side.  I -- it's

5   just as likely three years ago I would have been sitting in

6   your seat, Mr. Reese, in this case as I would have been on the

7   plaintiff's side.  Probably more likely I would have been

8   sitting on your side.

9        I understand why you raised this issue, but you don't need

10  to send me anything in writing.  I think I've got a handle on

11  what happened and I'm not going to strike the plaintiff's

12  infringement contentions.

13       Is there anything else we need to take up?

14       MR. HIPSKIND:  Your Honor, this is Daniel Hipskind for the

15  plaintiffs.

16       We have one other issue, if there's no other issues, that

17  we'd like to request before we leave, which would be regarding

18  this disqualification motion that Mr. Reese referenced.  Their

19  final reply brief is due Wednesday and we were hoping to obtain

20  leave of the Court to file a short surreply by the next Monday

21  which would be October 5th, and then at that point the motion

22  would be fully briefed up and we would be ready for a hearing

23  on that at the Court's convenience.

24       THE COURT:  Well, this is again going to kill my ambition

25  to be unreasonable as often as possible, but the truth is,

1    Mr. Hipskind, I'm -- like I said, I'm starting trial Monday.

2    So there's no imperative that you get this to us by Monday.  If

3    you all will get it filed next week -- and by you all I mean

4    the plaintiff get it filed by next week, and then I do think

5    this is something the Court needs to address very quickly

6    though.  So if you will get it filed next week and one of you

7    would be so kind as to check with my court clerk if I'm

8    available, and I should be the following week, I'd like to

9    take -- I'd like to set a hearing on this to be done by Zoom,

10   and -- unless you all wanted to do it in person in Waco which

11   would be fine as well.  But we can do it by Zoom.  I would be

12   happy to take this up not next week but the following week, and

13   you all can contact my clerk.  I think it's Hannah on this

14   case, but I could be wrong.  I think it's Hannah.  If you'll

15   check with her, you know, and get a couple of hours, you know,

16   set aside, I will rule on this motion not next week but the

17   following week.

18        So, Mr. Hipskind, if you'll just get your surreply filed

19   by middle or late next week, that'll give me sufficient time to

20   review it.  Does that take care of your concern?

21        MR. HIPSKIND:  Yes, Your Honor.  It does.  Thank you.

22        THE COURT:  Anything else?

23        MR. REESE:  Your Honor, this is Alex Reese again for

24   Juniper.

25        If I could just be heard on that issue.  Just as

1  background, we had requested from plaintiff's counsel when we

2  were -- when we were meet and conferring regarding the page

3  limitations that would govern Juniper's motion for

4  disqualification.  We had proposed also additional pages for

5  our reply brief.  Plaintiff's counsel said they would agree but

6  only if we agreed to a surreply.  We refused and said we'll

7  live with the five pages on reply because we think that it's

8  our motion, so we should have the final word.  If the Court is

9  inclined to allow a surreply, which it seems like the Court is

10  inclined to do, may we request ten pages for our reply brief

11  which is due this week?  We would otherwise be limited to five

12  pages.

13       THE COURT:  Let me -- I hope that we post this hearing

14  because you all have gotten to hear an awful lot about how I

15  see the world.  I think I have a hearing later today where the

16  parties I think want to have 1,200 pages per side for their

17  motions, and that is a little more weighty.  I think I can tell

18  everyone on this call that in my 900 -- what was it Joe Biden

19  said the other day, he'd been a senator for 180 years?  In my

20  180 years of practicing law, I never denied anyone an extension

21  of page limits.  In fact, I usually said, I hope you -- I hope

22  you file like 300 because I know how the Court will feel about

23  that.  So let me just assure you going forward in this case I

24  think we have -- we try and keep our page limits with respect

25  to the Markman at what the page limit is at because if we

1    don't, whatever number we give you all, you'll take, and we

2    already have too much stuff to read.  But in terms of the

3    exchange of motions, responses, replies, surreplies, I would

4    anticipate that everyone would agree without me needing to be

5    involved or any exchange of anything else.  A small addition.

6    I find ten pages instead of five to be imminently reasonable,

7    and you're certainly welcome to have ten pages for your reply

8    and I think a surreply.  I would -- I will always permit a

9    surreply in every important motion as well.

10        So, Mr. Reese, you have your ten pages.

11        Mr. Hipskind, you have your surreply, and we will take up

12    the motion to disqualify not next week but the following week.

13        Is there anything else we need to take up?

14        MR. HIPSKIND:  Nothing on behalf of the plaintiffs, Your

15    Honor.

16        THE COURT:  Mr. Reese or Mr. Mar?

17        MR. MAR:  Nothing else on behalf of Juniper.

18        THE COURT:  And, Mr. Newton, you've gotten to be awfully

19    quiet throughout this entire process, which is always the best

20    place to be I think whenever you're in front of a judge.

21        So you all have a great week.  Be safe out there.  And

22    like I said to all of you all, if you have any issues with --

23    in terms of resolving the scheduling order, just let me know as

24    soon as you anticipate having those issues.  I'll get involved.

25    We'll get them resolved, but I want them resolved -- I want the

1   scheduling order issues resolved in September or very early

2   October.  I don't -- but, you know, I don't want you all

3   feeling like you can't get started because of any delay with

4   respect to that.  I will be happy to be involved and resolve

5   things for you if you have any issues.

6        Have a good day.  Take care.

7        (Hearing adjourned at 2:06 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT )

2  WESTERN DISTRICT OF TEXAS     )

3

4       I, Kristie M. Davis, Official Court Reporter for the

5  United States District Court, Western District of Texas, do

6  certify that the foregoing is a correct transcript from the

7  record of proceedings in the above-entitled matter.

8       I certify that the transcript fees and format comply with

9  those prescribed by the Court and Judicial Conference of the

10 United States.

11      Certified to by me this 11th day of October 2020.

12

13                          */s/ Kristie M. Davis*
                            KRISTIE M. DAVIS
14                          Official Court Reporter
                            800 Franklin Avenue
15                          Waco, Texas 76701
                            (254) 340-6114
16                          kmdaviscsr@yahoo.com

17

18

19

20

21

22

23

24

25